OPINION
{¶ 1} This is an appeal from a decision of the Common Pleas Court of Tuscarawas County. While the caption of this case lists Barbara Fishel, nka Kinsey as appellee, the actual appellees are the grandparents, Dan and Beverly Kinsey and they shall be termed appellees herein.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The marriage of appellant and Barbara Fishel produced two children: Edward Fishel, Jr. (D.O.B. 1/5/87) and Heather M. Fishel (D.O.B. 1/11/89).
 {¶ 3} The marriage was terminated by divorce on June 23, 1992.
 {¶ 4} The mother of such children and former wife of appellant was named custodian of the children at the time of the divorce decree. Subsequently, she was indicted and convicted of sexual misconduct relating to the children and incarcerated. Custody was then transferred to appellant.
 {¶ 5} Appellees are parents of Barbara (Fishel) Kinsey and were previously granted grandparent visitation rights.
 {¶ 6} Eddie Fishel, Jr. was charged with delinquency due to alleged sexual conduct with a child, and, as a result, by agreement of appellant and the grandparents his custody was transferred to them.
 {¶ 7} Such agreement docketed October 4, 2000 in Case No. 2000CC00026 also provided:
 {¶ 8} "2. Custody of Heather Marie Fishel, dob January 11, 1989, shall remain as last determined in Common Pleas Case No. 90 T.C. 12 0529.
 {¶ 9} "3. The parties shall file an agreed visitation schedule in Common Pleas Case No. 90 T.C. 12
0529.
 {¶ 10} "4. As previously ordered in Case No. 90 T.C. 12 0529, Beverly and Daniel Kinsey shall enjoy overnight visitation with Heather Marie Fishel on alternate weekends beginning September 22, 2000, and for 30 days during summer school vacation, as set forth in standard schedules A and B, . . ."
 {¶ 11} Almost unending conflicts have occurred concerning visitation between appellant and appellees. This present matter originated by way of appellees filing a motion for change of custody as to Heather and also a show cause for contempt by appellant.
 {¶ 12} Appellant also filed a motion to terminate grandparent visitation.
 {¶ 13} It proceeded to a magistrate's hearing on October 3, 2001 with a decision being issued on October 30, 2001.
 {¶ 14} Appellant and appellees filed objections to such decision.
 {¶ 15} The magistrate's decision recommended appellant as custodian of Heather with reduced visitation by appellees and termination of access by them to education and medical information.
 {¶ 16} The court adopted the findings and recommendations of the magistrate.
 {¶ 17} Appellant raises three Assignments of Error:
 ASSIGNMENTS OF ERROR
I.
 {¶ 18} "THE TRIAL COURT APPLIES R.C. 3109.051(B)(1) UNCONSTITUTIONALLY WHEN IT REQUIRES GRANDPARENT VISITATION OVER THE OBJECTION OF A FIT CUSTODIAL PARENT ABSENT ANY THRESHOLD SHOWING BY THE GRANDPARENTS OF ACTUAL HARM TO THE CHILD FROM THE WITHHOLDING OF SUCH VISITATION."
II.
 {¶ 19} "THE TRIAL COURT UNCONSTITUTIONALLY APPLIES R.C. 3109.051(B) IN A PROCEEDING TO ESTABLISH GRANDPARENT VISITATION WHEN IN CONSIDERING ALL APPROPRIATE FACTORS IT FAILS TO AFFORD SPECIAL OR SUBSTANTIAL WEIGHT TO THE OBJECTION BY A FIT CUSTODIAL PARENT TO SUCH VISITATION."
III.
 {¶ 20} "THE DECISION OF THE TRIAL COURT REQUIRING GRANDPARENT VISITATION, ON THIS RECORD, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS AN ABUSE OF DISCRETION."
 I., II. {¶ 21} We shall address the first and second Assignments of Error simultaneously as each deal with the constitutional application of R.C. § 3109.05(B)(1).
 {¶ 22} In its divided opinion in Troxel v. Granville (2000),530 U.S. 57, the United States Supreme Court examined the state of Washington statute as to visitation rights, which provided that any person at any time could petition the court for visitation rights.
 {¶ 23} The Washington Supreme Court ruled:
 {¶ 24} ". . . §§ 26.10.160(3) unconstitutionally infringes on parents' fundamental right to rear their children. Reasoning that the Federal Constitution permits a State to interfere with this right only to prevent harm or potential harm to * * * the child, it found that §§ 26.10.160(3) does not require a threshold showing of harm and sweeps too broadly by permitting any person to petition at any time with the only requirement being that the visitation serve the best interest of the child." Such decision was affirmed by the United States Supreme Court which stated:
 {¶ 25} "* * *
 {¶ 26} "There is presumption that fit parents act in best interests of their children. (Per Justice O'Connor, with the Chief Justice and two Justices concurring, and with two Justices concurring in result.)
 {¶ 27} "* * *
 {¶ 28} "Due Process Clause does not permit state to infringe on fundamental right of parents to make child-rearing decisions simply because state judge believes a "better" decision could be made. U.S.C.A. Const. Amend. 14. (Per Justice O'Connor, with the Chief Justice and two Justices concurring, and with two Justices concurring in result.)
 {¶ 29} "* * *
 {¶ 30} "(a) The Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772, including parents' fundamental right to make decisions concerning the care, custody, and control of their children, see, e.g., Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551. Pp. 2059-2060."
 {¶ 31} Revised Code § 3109.051(B) differs from the Washington statute § 26.10.160(3) and is as follows:
 {¶ 32} "(B)(1) In a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child, the court may grant reasonable companionship or visitation rights to any grandparent, any person related to the child by consanguinity or affinity, or any other person other than a parent, if all of the following apply:
 {¶ 33} "(a) The grandparent, relative, or other person files a motion with the court seeking companionship or visitation rights.
 {¶ 34} "(b) The court determines that the grandparent, relative, or other person has an interest in the welfare of the child.
 {¶ 35} "(c) The court determines that the granting of the companionship or visitation rights is in the best interest of the child.
 {¶ 36} "(2) A motion may be filed under division (B)(1) of this section during the pendency of the divorce, dissolution of marriage, legal separation, annulment, or child support proceeding or, if a motion was not filed at that time or was filed at that time and the circumstances in the case have changed, at any time after a decree or final order is issued in the case."
 {¶ 37} This Court in Epps v. Epps (2001), Ashland App. No. 01COA0143, unreported and in Fischer v. Wright, et al. (2001), Coshocton App. Nos. 00CA028, 01CA003, 2001-Ohio-1900, stated that such Ohio statute was facially constitutional.
 {¶ 38} These rulings conform to Troxel v. Granville in that such case did not abrogate all state statutes dealing with visitation but the constitutional applicability in each case, keeping in mind the presumption that a fit parent acts in the best interests of the children and due deference or special weight must be given to the opinions of the parent.
 {¶ 39} In examining the transcript of evidence presented we find that virtually nothing was presented except complaints over visitation compliance.
 {¶ 40} Also, the only statement by appellant concerning his constitutional right as a fit parent to raise his child without Court interference was as follows:
 {¶ 41} "* * *
 {¶ 42} "Q Do you want to be the one who makes the decisions as to whether or not Heather visits her grandparents instead of the Court?
 {¶ 43} "A Yes.
 {¶ 44} "Q If you had the ability to decide when Heather will visit, do you have any — is your inclination to cut the Kinseys off completely?
 {¶ 45} "A No. I could see, if she wants to go down for Christmas, Easter, you know, Thanksgiving. She told me she didn't want to go down, you know —
 {¶ 46} "Q You can't tell me what she said.
 {¶ 47} "A Yeah, I know, it's hearsay, I'm sorry.
 {¶ 48} "Q But, that's your position?
 {¶ 49} "A Right, you know that's my side.
 {¶ 50} "* * *" (T. at p. 125-126).
 {¶ 51} We further find that the trial court in adopting the recommendations of the magistrate followed the requirements of Troxel v.Granville as it recognized:
 {¶ 52} "Thereafter, if a fit parent's determination on such issue becomes subject to judicial review, the court must at least afford some special weight to said parent's own decision."
 {¶ 53} We therefore find no support in the record or in the trial court's decision or in the magistrate's findings adopted by the trial court for determining an unconstitutional application of R.C. §3109.051(B).
 {¶ 54} Assignments of Error one and two are therefore overruled.
 III. {¶ 55} The third Assignment of Error asserts lack of manifest weight of the evidence and abuse of discretion.
 {¶ 56} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine " whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Martin
(1983), 20 Ohio App.3d 172. See also, State v. Thompkins (1997),78 Ohio St.3d 380.
 {¶ 57} The standard of review is abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice
and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 58} We find that the record supports the conclusions reached and that no abuse of discretion is present.
 {¶ 59} This cause is affirmed.
By: Boggins, J., Hoffman, P.J. and Edwards, J. concur.
Topic: Grandparent visitation.